UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
BRANDON THOMAS HILL,             :
    Plaintiff,                   :
                                 :
v.                               : Civil No. 3:16CV2000 (AWT)
                                 :
NANCY A. BERRYHILL,              :
ACTING COMMISSIONER OF SOCIAL    :
SECURITY,                        :
    Defendant.                   :
```

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Brandon Thomas Hill has appealed under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), a final Decision by the Commissioner denying his application for disability insurance benefits. The plaintiff has filed a motion for reversal or remand, and the Commissioner has filed a motion for an order affirming the Commissioner's Decision. For the reasons set forth below, the court concludes that the findings by the Administrative Law Judge ("ALJ") are supported by substantial evidence, and the Commissioner's final Decision should be affirmed.

## Legal Standard

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.§ 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844

(2d Cir. 1981). The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the Decision is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a mere scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258. Therefore, absent legal error, this court may not set aside the Decision of the Commissioner if it is supported by substantial evidence. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g)("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Further, if the Commissioner's Decision is supported by substantial evidence, that Decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary

position.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## **Discussion**

On June 20, 2012, the plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning April 9, 2011.  The plaintiff appeared telephonically and testified at a hearing on May 5, 2014.  On August 28, 2014, the ALJ issued the Decision concluding that the claimant was not disabled.

At Step Two the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe".  20 C.F.R. § 404.1520(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  SSR 96-3p.

At Step Two the ALJ found that the plaintiff had the following severe impairments:  "persistent somatoform disorder and schizophrenic, paranoid, and other functional psychotic disorder-delusional disorder, somatic type rule out."  R. at 42.  The plaintiff argues that the ALJ erred by not concluding that the plaintiff had a severe impairment in the form of a chemical hypersensitivity or Multiple Chemical Sensitivity ("MCS").

3

As a framework for her analysis on this issue the ALJ followed the guidance from SSR 96-4p, which includes the following:

> Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of impairment be established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings (SSR 96-4p).
>
> No symptoms or combinations of symptoms by itself can constitute a medically determinable impairment. In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process (SSR 96-4p).

R. at 43.

The record shows that the plaintiff had a disability evaluation on April 3, 2012. The examination was conducted by Dr. Ronald S. Jolda, who stated: "He has a self diagnosed chemical sensitivity syndrome. He has never had an evaluation work up. He is going to see a doctor in two days for a full workup of this problem." R. at 558.

On April 6, 2012 the plaintiff saw Dr. David C. Christiani, but he did not get a "full workup". Dr. Christiani's notes reflect that "[t]he patient has not been formally diagnosed by a

4

physician to have this syndrome but strongly feels that he does based on his history and symptom complex. He provided a detailed summary of his history." R. at 563. Dr. Christiani's assessment was that the plaintiff met the criteria for multiple chemical sensitivity, but Dr. Christiani's assessment was based on the plaintiff's self-reported symptoms. Subsequently Dr. Christiani issued a letter, dated November 14, 2013, in which he opined that the plaintiff suffered from "environmental intolerance, also termed multiple chemical sensitivity". R. at 572. However, that letter does not reflect that any medically acceptable clinical and laboratory diagnostic tests had been done to help diagnose this condition.

Then, on March 27, 2014, the plaintiff was examined by Dr. Dan O. Harper, who had reviewed a healthcare questionnaire completed by the plaintiff. Dr. Harper stated that the plaintiff met all the criteria for chemical hypersensitivity, but this conclusion was based on Dr. Harper's review of a four-page letter setting forth the claimant's subjective allegations. See R. at 598. Dr. Harper also performed genomic testing. However, as noted by the ALJ, the report of the test contains a disclaimer stating that genomic testing has not been cleared or approved by the U.S. Food and Drug Administration. See R. at 575.

The hearing was held on May 5, 2014. After the hearing, the plaintiff was examined by Dr. Genie Burns. The plaintiff "had no documented treatment for persistent somatoform disorder and schizophrenic, paranoid, and other functional psychotic disorder-delusional disorder". R. at 50. However, Dr. Burns made these diagnoses and her diagnoses were given partial weight.

On July 16, 2014 the plaintiff was seen by Dr. Nancy Didriksen. Dr. Didriksen opined that "Somatic Symptom Disorder and Delusional Disorder, Somatic Type, are not appropriate diagnoses for Mr. Hill, but are often considered by healthcare providers who are unfamiliar with toxic/neurotoxic effects." R. at 613. Dr. Didriksen evaluated the plaintiff's neuropsychological test results. Her findings indicated that even where "[h]e is most impaired", he fell "well within normal limits, statistically (average to high-average range)". R. at 612. Also, she stated that

> Mr. Hill's present condition appears to be consistent with the **mildest classification** of solvent-induced CNS disorders identified by World Health Organizations/Nordic Council of Ministers Working Group in June 1985 (organic affective syndrome), and later by the International Solvent Workshop in Raleigh North Carolina in October 1985 (Type 1), characterized by symptoms including fatigue, irritability, depression, anxiety, and other physical and behavioral symptoms.

R. at 613 (emphasis added).

6

Based on a review of the record, the court concludes that there is substantial evidence to support the ALJ's conclusion that the plaintiff did not have a severe impairment in the form of MCS. "[U]nder no circumstances may the existence of impairment be established on the basis of symptoms alone" (SSR 96-4p), and that is all that the plaintiff provided that tends to support his claim. There are no medical records reflecting treatment for such a condition, and the diagnoses that he received from doctors were based on the plaintiff's own report of his symptoms and self-diagnosis. As to the genomic testing performed by Dr. Harper, the test itself disclaimed that it "has not been cleared or approved by the U.S. Food and Drug Administration . . . and should not be interpreted as diagnostic or [a] treatment recommendation . . . . [Its] accuracy . . . is not 100 %." R. at 575.

The plaintiff contends that "the ALJ's weighing of the evidence is fatally flawed". Pl.'s Mem. Reversing (Doc. No. 20-1) at 7. He also contends that the ALJ failed to provide adequate reasons for rejecting the opinions of Drs. Christiani, Harper and Didriksen. However, as to the first point, the ALJ's conclusion was supported by evidence that she discussed in the Decision, and the fact that the plaintiff can also point to evidence supporting his position does not mean that the ALJ's Decision was not supported by substantial evidence. In fact, as

7

long as the ALJ's opinion is supported by substantial evidence it must be upheld even where the plaintiff's position is also supported by substantial evidence.  See Schauer, 675 F.2d at 57.

As to the second point, a review of the Decision shows that the ALJ provided specific reasons for not placing weight on the opinions of Drs. Cristiani, Harper and Didriksen.  See R. at 44-45, 563-64, 560, 572 as to Dr. Cristiani (lacks relevant objective findings and is based on subjective allegations which are inconsistent with hearing testimony (e.g., showered and slept at home, used public restrooms and engaged socially); see R. at 43-45, 582-601 as to Dr. Harper (MCS opinion based on subjective allegations, genomic testing has not been cleared or approved by the U.S. Food and Drug Administration and opinion is inconsistent with the hearing testimony (e.g., used public restrooms, showered and slept at home, admitted that cars have multiple chemical problems); see R. at 52-53, 612-16 as to Dr. Didriksen (based on subjective allegations and patient comparisons rather than objective evaluation and findings, inconsistent with hearing testimony (e.g., admitted not following Dr. Harper's treatment regimen, making selective medical appointments, using public restrooms and engaging socially), and referencing non-authoritative, dated (1973-2005) documents and literature).

## **Conclusion**

For the reasons set forth above, the Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 19) is hereby GRANTED, and Plaintiff's Motion for Summary Judgment and Order Reversing the Commissioner's Decision (Doc. No. 18, 20) are hereby DENIED.

The Clerk shall enter Judgment accordingly and close this case.

It is so ordered.

Dated this 26th day of March 2018, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge